Court of Appeals Docket No. 17-50197

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

UNITED STATES OF AMERICA,
*Plaintiff - Appellee,*

v.

NERSES NICK BRONSOZIAN
*Defendant - Appellant,*

_____

On Appeal from the Judgment of the United States District Court for the
Central District of California, Case No. 2:16-cr-00196-SVW-1
Honorable Stephen V. Wilson

_____

**APPELLANT'S PETITION FOR REHEARING AND SUGGESTION
FOR REHEARING *EN BANC***

_____

John L. Littrell, State Bar No. 221601
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile (949) 369-3701
jlittrell@bienertkatzman.com
On CJA Appointment

Attorneys for Defendant
NERSES NICK BRONSOZIAN

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................1

II. RELEVANT FACTS............................................................................3

III. THE PANEL DECISION .....................................................................5

IV. ARGUMENT........................................................................................5

    A. *Hunter* is Fundamentally Flawed and Should Be Revisited..................................................................................5

        1. *Dalton* ........................................................................7

        2. *Jones* ..........................................................................8

        3. *Hunter* .......................................................................9

    B. This Case is an Ideal Vehicle for Reconsideration of *Hunter*................................................................................ 11

    C. *Hunter* is Plainly in Conflict With *NFIB* ................................ 11

V. CONCLUSION ................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hunter v. United States,*
    73 F.3d 260 (9th Cir. 1996) ....................................................................*passim*

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
    567 U.S. 519 (2012)...............................................................1, 4, 6, 11, 12

*Nigro v. United States,*
    276 U.S. 332 (1928)..........................................................................................6

*Sonzinsky v. United States,*
    300 U.S. 506. (1937)....................................................................................6, 8

*Staples v. United States,*
    511 U.S. 600 (1994).........................................................................................12

*Texas v. United States,*
    Case No. 19-10011, 2019 WL 2061281
    (5th Cir. May 1, 2019)....................................................................................12

*Texas v. United States,*
    340 F. Supp. 3d 579 (N.D. Tex. 2018).........................................................1

*United States v. Ardoin,*
    19 F.3d 177 (5th Cir. 1994) ....................................................................2, 8, 9

*United States v. Bronsozian,*
    764 F. App'x 633 (9th Cir. 2019)...........................................................5, 10

*United States v. Ferguson,*
    788 F. Supp. 580 (D.D.C 1992)....................................................................7

*United States v. Dalton,*
    960 F.2d 121 (10th Cir. 1992).............................................................*passim*

*United States v. Dorsey,*
    77 F.3d 490 (9th Cir. 1996)............................................................................10

*United States v. Grier,*
    354 F.3d 210 (3d Cir. 2003).................................................................2, 8, 9

*United States v. Kahriger,*
    345 U.S. 22 (1953)..............................................................................6

*United States v. Kurt,*
    988 F.2d 73 (9th Cir. 1993)..................................................................3, 9

*United States v. Jones,*
    976 F.2d 176 (4th Cir. 1992)................................................................*passim*

*United States v. Jones,*
    182 F.3d 928 (9th Cir. 1999)................................................................10

*United States v. Milojevich,*
    98 F.3d 1347 (9th Cir. 1996)................................................................10

*United States v. Milojevich,*
    113 F.3d 1243 (9th Cir. 1997)..............................................................10

*United States v. Pellicano,*
    135 F. App'x 44, 48 (9th Cir. 2005)......................................................10

*United States v. Rock Island Armory, Inc.,*
    773 F. Supp. 117 (C.D. Ill. 1991).........................................................8

**Constitutional Provisions**

U.S. Const., Art. I, § 8., cl. 1................................................................. 1, 6, 7

**Statutes**

26 U.S.C. § 922(o)...............................................................................2, 4, 6, 7

26 U.S.C. § 5822.................................................................................2, 4, 8

26 U.S.C. § 5861(d)............................................................................. *passim*

Tax Cuts and Jobs Act of 2017,
    Pub. L. No. 115-97, 131 Stat. 2092 (2017)..........................................12

Firearm Owners Protection Act of 1986,
    Pub. L. No. 99-308, 100 Stat. 449 (1986)..............................................6, 7, 8

Harrison Narcotics Tax Act of 1914,
    Pub. L. No. 63-223, 38 Stat. 785 (1914)........................................................6

**Regulations**

27 C.F.R. § 479.61............................................................................................6

27 C.F.R. § 479.105....................................................................................7, 10

**Rules**

Fed. R. App. Proc. 35......................................................................................1

Fed. R. App. Proc. 40......................................................................................1

**Other Authorities**

*National Firearms Act: Hearing Before the H. Comm. on Ways & Means,*
73rd Cong., 2d. Sess. 8 (April 16, 1934)..........................................................5

Rept. No. 1780, Comm. on Ways and Means,
U.S. H.R., 73rd Congress, 2nd Sess. 2 (1934).................................................6

Rept. No. 1444, Comm. on Finance,
U.S. Sen., 73rd Congress, 2nd Sess. 1 (1934).................................................6

U.S. Dep't of Justice, Bureau of Alcohol, Tobacco Firearms & Explosives,
*ATF National Firearms Handbook,* ATF E-Pub. 5320.8 (2009)..........................5

U.S. Dep't of Justice, U.S. Attorneys' Manual 9-63.516,
(U.S.A.M.), 1999 WL 33219894......................................................................2

Appellant Nerses Nick Bronsozian respectfully petitions this Court for rehearing pursuant to Fed. R. App. Proc. 40 and respectfully suggests that the rehearing be held *en banc* pursuant to Fed. R. App. Proc. 35.

## I.  INTRODUCTION

This case presents an issue of exceptional importance regarding Congress' authority to use its taxation power to legislate in an area traditionally left to the states. At issue is the validity of the National Firearms Act's ("NFA") prohibition on the possession of unregistered machineguns under 26 U.S.C. § 5861(d). The Supreme Court has repeatedly (and recently) affirmed that a law passed under Article I, section 8, cl. 1 cannot be valid unless the law generates "at least some revenue." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ("*NFIB*").

26 U.S.C. § 5861(d) is authorized only by Congress' Article I power to tax. And yet it is undisputed that § 5861(d)'s prohibition on machinegun possession generates no revenue. Ever since Congress passed the Firearm Owners Protection Act ("FOPA") in 1986, the government has refused to register (or collect tax payments) on previously unregistered machineguns. As a result, the sole constitutional justification for the federal prohibition on machinegun possession under § 5861(d) has been eliminated.

The panel's decision sits on the wrong side of an entrenched circuit split. The Tenth Circuit struck down § 5861(d) as unconstitutional as applied to the simple possession of unregistered machineguns in 1992, holding that the government's refusal to register or collect taxes on machineguns had undercut the sole authority for the law. *United States v. Dalton*, 960 F.2d 121, 124-25 (10th Cir. 1992). *Dalton* remains good law,

1

and therefore there can be no prosecution under § 5861(d) for the mere possession of an unregistered machinegun in the Tenth Circuit.[1]

The Third, Fourth, and Fifth Circuits have disagreed with *Dalton*. *See United States v. Jones*, 976 F.2d 176 (4th Cir. 1992); *United States v. Ardoin*, 19 F.3d 177 (5th Cir. 1994); *United States v. Grier*, 354 F.3d 210 (3d Cir. 2003). But those cases rely on the faulty premise that "knowing the chain of possession and transfer [of machineguns] assists in determining who made the firearm" and is therefore is "supportable as in aid of a revenue purpose." *See, e.g., Jones*, 976 F.2d at 184. That argument is illogical on its face because the government refuses to accept registration of previously unregistered machineguns. And in each of those cases the defendant was charged with more than the mere possession of a machinegun.

---

[1] The Department of Justice has also conceded that it is impossible for a defendant to comply with the NFA's registration requirement with respect to previously unregistered machineguns, and as a result it has directed prosecutors not to charge a violation of § 5861(d) in cases like this one:

> Section 922(o) of Title 18 makes it unlawful to transfer or possess a machine gun made after May 19, 1986. In addition, under the NFA, it is unlawful to manufacture or possess a machine gun without first registering it with the Secretary of the Treasury and paying applicable taxes. 26 U.S.C. §§ 5822, 5861. As a result of the enactment of 18 U.S.C. § 922(o), the Secretary of the Treasury no longer will register or accept any tax payments to make or transfer a machine gun made after May 19, 1986. Accordingly, because it is impossible to comply with the registration and taxation provisions in the NFA, prosecutors should charge the unlawful possession or transfer of a machine gun made after May 19, 1986 under § 922(o).

U.S. Attorneys' Manual 9-63.516, *Charging Machinegun Offenses Under 18 U.S.C. S 922(o) Instead of Under the National Firearms Act*, 1999 WL 33219894, at *1.

This Court initially agreed with the Tenth Circuit's analysis in *Dalton*. *United States v. Kurt*, 988 F.2d 73 (9th Cir.1993). But in 1996 it abruptly changed course. In a *per curiam* decision, this Court rejected *Kurt* as *dicta* and instead adopted, without analysis, the flawed reasoning in *Jones*. *See Hunter v. United States*, 73 F.3d 260 (9th Cir. 1996) (*per curiam*).

*Hunter* has been the sole controlling authority on the issue in this Circuit since 1996, and this Court has repeatedly relied on *Hunter* when affirming convictions for machinegun possession under § 5861(d). But *Hunter* was wrongly decided and is inconsistent with subsequent Supreme Court precedent. Given the importance of the issue nationally and the entrenched circuit split, this Court's sole authority on the topic should not be a poorly reasoned *per curiam* decision. This Court should grant rehearing *en banc* in order to correct its flawed decision in *Hunter* and bring this Court's authority in line with intervening Supreme Court precedent.

## II. RELEVANT FACTS

Bronsozian was charged by indictment with one count of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). The facts were relatively simple and largely undisputed. Bronsozian was not charged with manufacturing or transferring the weapon or with any other crime.

Bronsozian moved to dismiss the indictment on the ground that Congress does not have authority to impose criminal penalties for the mere possession of unregistered machineguns under 26 U.S.C. § 5861(d). He argued that § 5861(d) is premised exclusively on Congress' power to tax

3

under Article I, but is no longer justified because the law generates no tax revenue and is enforced only as a punitive measure. ER 12, CR 63.[2]

Bronsozian acknowledged that *Hunter* was dispositive but argued that the decision was fundamentally flawed. He noted that when this Court adopted the reasoning of *Jones*, it ignored a crucial distinction between the subsections of the NFA at issue in *Jones* (26 U.S.C. § 5822, 26 U.S.C. § 5861(c), (e), and (j)), and the subsection at issue in that case (26 U.S.C. § 5861(d)). Jones was prosecuted for *manufacturing* and *transferring* machineguns, whereas the defendant in *Hunter* (like Mr. Bronsozian) was charged only with *possession* of an unregistered machinegun. Whereas the making of machineguns and transfer of previously registered machineguns could at least arguably be taxed, and therefore create revenue, the mere possession of a previously unregistered machinegun cannot.

Bronsozian also argued that the Supreme Court's decision in *NFIB* overruled *Hunter* because it set out a two-part test for evaluating the constitutionality of a tax statute, and insofar as § 5861(d) applied to the possession of machineguns, it satisfied neither of those tests. ER 12, CR 63.

The district court denied the motion, finding that it was bound by this Court's *per curiam* decision in *Hunter*. ER 12, CR 82. The court also rejected Bronsozian's argument that *Hunter* had been overruled by *NFIB*, finding that the cases were not "irreconcilable." *Id*. The district court emphasized, however, that that *this Court* "may ultimately decide to overturn its holding in *Hunter*, either because it wishes to reconsider its

---

[2] Bronsozian also argued that § 5861(d) is invalid because it was implicitly repealed when Congress passed 18 U.S.C. § 922(o), and that it violated the Due Process clause to punish the mere possession of an unregistered machinegun because it is impossible to comply with the law.

4

previous adoption of the Fourth Circuit's reasoning in *Jones* or because it finds that the [*NFIB*] holding has invalidated the constitutional justification of § 5861(d) . . . ." *Id*. Bronsozian was convicted following a jury trial.

### III. THE PANEL DECISION

Like the district court, the three-judge panel held that Bronsozian's arguments were precluded by this Court's *per curiam* decision in *Hunter*. The panel did not defend or explain the *Hunter* decision. It merely held that it could not depart from *Hunter* unless it was "clearly irreconcilable" with an intervening Supreme Court or *en banc* decision. *United States v. Bronsozian*, 764 F. App'x 633, 634 (9th Cir. 2019)

### IV. ARGUMENT

#### A. *Hunter* is Fundamentally Flawed and Should Be Revisited

The NFA was initially passed in 1934. The law was originally conceived and codified as a tax statute, though its drafters acknowledged that the true purpose of the law had nothing to do with generating revenue. Rather, it was intended to "curtail, if not prohibit" transactions involving particularly dangerous weapons that were primarily used by criminals.[3] As then Attorney General Homer S. Cummings explained in a legislative hearing, "[w]e have no inherent police power to go into certain localities and deal with local crime." National Firearms Act: Hearings Before the House Committee on Ways and Means, 73rd Cong., 2d Sess., 8 (1934).

---

[3] U.S. Dep't of Justice, Bureau of Alcohol, Tobacco Firearms & Explosives, *ATF National Firearms Handbook,* A.T.F. E-Pub. 5320.8 (2009), chapter 1, p. 1, https://www.atf.gov/firearms/docs/atf-national-firearms-act-handbook-introduction/download (viewed June 9, 2019)

5

Congress, having yet to expand its power under the Commerce Clause, followed the same formula it had used to regulate narcotics under the Harrison Narcotics Tax Act of 1914: rather than ban the undesirable activity outright, it taxed it. *See* Rept. No. 1780, Committee on Ways and Means, U.S. House of Representatives, 73rd Cong., 2d Sess. 2 (1934); Rept. No. 1444, Committee on Finance, U.S. Senate, 73rd Cong., 2d Sess. 1 (1934); *see also Nigro v. United States*, 276 U.S. 332 (1928).

When it relied exclusively on its power to tax, however, Congress obligated itself to craft a law that had the "essential feature of any tax . . . [that it] produce[] at least some revenue for the Government." *NFIB*, 567 U.S at 2594 (quoting *United States v. Kahriger*, 345 U.S. 22, 28 (1953).[4] Faithful to that requirement, the law imposed a $200 tax on the making and transferring of firearms. *See* 27 C.F.R. § 479.61. At that point machineguns could be registered, and the government collected $200 for each registration.

The NFA was subsequently challenged on several occasions on the ground that the law was not a "true tax" but instead a "penalty." *See Sonzinsky v. United States*, 300 U.S. 506. (1937). The Supreme Court upheld the law because "on its face it is only a taxing measure" and because it was "productive of some revenue." *Id*. at 512. "[S]ince it operates as a tax," the Court held, "it is within the national taxing power." *Id*.

That changed with respect to machineguns in 1986, when Congress passed the FOPA. *See* 18 U.S.C.A. § 922(o). The FOPA, which was premised solely on Congress' Commerce Clause authority, prohibited the possession of any machinegun that was not previously registered as of May

---

[4] Article I, § 8, cl. 1 of the Constitution provides: "The Congress shall have power to lay and collect taxes, duties, imposts, and excises. . . .".

19, 1986. *Id*. Since the passage of FOPA, the Bureau of Alcohol, Tobacco and Firearms ("ATF") will not accept applications to transfer, register, or pay the $200 tax on any machine gun that was not previously registered as of May 19, 1986. 27 C.F.R. § 479.105.

As a result, at the time Bronsozian possessed the machinegun at issue in this case, it was impossible to either register or pay a tax on it.

### 1. *Dalton*

Following the passage of FOPA, the Tenth Circuit held that 26 U.S.C. § 5861(d) cannot be enforced with respect to machineguns possessed after 1986. *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992). Dalton was convicted with a violation of 26 U.S.C. § 5861(d) and (e). The Tenth Circuit held that the statute was invalid because it was not within Congress' enumerated power to lay and collect taxes under Article I, § 8 cl 1. Although the statute originally was a valid tax measure because it generated revenue when passed, the Court reasoned, it could no longer be justified as to machineguns possessed after 1986 because the government refused to accept registration or tax payments for them. *Id*. at 124-25 ("[B]ecause the registration requirements of the National Firearms Act were passed pursuant to the taxing power, and because after the enactment of section 922(o) the government will no longer register or tax machineguns, section 922(o) has 'removed the constitutional legitimacy of registration as an aid to taxation.'"); *Id*. at 125 ("[A] provision which is passed as an exercise of the taxing power no longer has that constitutional basis when Congress decrees that the subject of that provision can no longer be taxed."). Several other courts agreed. *See, e.g., United States v. Ferguson*, 788 F. Supp. 580, 581 (D.D.C. 1992) ("To the extent section 922(o) applies, therefore, the

7

registration requirement is now unconstitutional"); *United States v. Rock Island Armory, Inc.*, 773 F. Supp. 117 (C.D. Ill. 1991).

### 2. *Jones*

The Fourth Circuit rejected the reasoning in *Dalton*. In *Jones*, 976 F.2d 176, a mechanical engineer had invented a method to convert semi-automatic shotguns into machineguns. *Id.* at 181. He was charged with violations of the NFA relating to manufacturing a machinegun without permission, 26 U.S.C. § 5822, possessing a firearm that was manufactured in violation of the act, 26 U.S.C. § 5861(c), transportation of unregistered firearms, 26 U.S.C. § 5861(j), and transferring a firearm in violation of the act, 26 U.S.C. § 5861(e). He was not charged with mere possession of an unregistered machinegun under 26 U.S.C. § 5861(d). Jones argued, like the defendant in *Dalton*, that the law had "lost its constitutional basis" because the government refused to register machineguns after 1986.

The Fourth Circuit disagreed, holding that the statute was valid as a tax measure even if the government refused to accept registration of machineguns because the *making* of illegal machineguns continues to be taxed after FOPA. *Id.* at 183. The Court reasoned that "knowing the chain of possession and transfer assists in determining who made the firearm and hence is 'supportable as in aid of a revenue purpose.'" *Id.* at 184 (quoting *Sonzinsky*, 300 U.S. at 513). Several circuits adopted that reasoning. *See, e.g.*, *Ardoin*, 19 F.3d 177; *Grier*, 354 F.3d 210. But in each of those cases the defendant was charged with more than the mere possession of a machinegun. *See Ardoin*, 19 F.3d at 179 (defendant charged under §§ 5821, 5861(d), (e), (f), (l), 5871, and 5845); *Grier*, 354 F.3d at 212 (defendant charged under §§ 5861(c), (e), and (f)). Because the defendants in those

8

cases engaged in activity that could at least theoretically have been taxed, the law could—at least theoretically—generate tax revenue in connection with their conduct. *See Grier*, 354 F.3d at 215. That reasoning doesn't apply to the simple possession of unregistered machineguns under § 5861(d).

### 3. *Hunter*

This Court initially sided with the Tenth Circuit in a published decision in a criminal case. In *Kurt*, this Court noted that the government "made a clear choice to proceed under § 5861, even though it could have proceeded under 18 U.S.C. § 922(o)", and even though "compliance with the requirements of § 5861(d) [was] impossible." 988 F.2d at 75. The Court noted the analysis in *Dalton* "with favor," but it did not decide whether § 5861(d) was constitutional because it was not clear whether the weapon in that case was first purchased or converted into a machinegun after May 19, 1986.

However, in 1996, this Court suddenly reversed course in *Hunter*, a *per curiam* decision in a post-conviction case. 73 F.3d 260. The Court's analysis of the Article I argument spans four sentences, and the holding is captured only in the last two: "We adopt the rationale of *Jones*, that requiring those who possess machine guns to register them is in aid of the taxing power even if the government no longer taxes possession. The manufacture of machine guns continues to be taxed, and knowing the chain of possession of a firearm would help the government determine who made it; thus, requiring registration for possession still facilitates taxation." *Id*. at 262 (citing *Jones*, 976 F.2d at 183–84; *Ardoin*, 19 F.3d at 180).

9

The reasoning in *Hunter* does not survive scrutiny. It is simply illogical to conclude that "requiring those who possess machineguns to register them is in aid of the taxing power even if the government no longer taxes possession." *Id*. The government does not "require" machinegun possessors to register them. To the contrary, the government *refuses to accept registration of machineguns that are not previously registered*. *See* 27 C.F.R. § 479.105. Therefore, the law cannot provide the government with any information about either the provenance or "chain of possession" of previously unregistered machineguns. *See Jones*, 976 F.2d 184. Even if that reasoning had some traction in a case involving the *making* or transfer of *machineguns*, it has none in a case, like this one, involving the mere possession of an unregistered machinegun. When this Court blindly adopted the reasoning of *Jones* and rejected *Dalton*, it ignored this crucial distinction.

Citing *Hunter*, this Court has summarily rejected Article I challenges to §5861(d) in several unpublished decisions. *See, e.g., United States v. Milojevich*, 98 F.3d 1347 (9th Cir. 1996) (unpublished), opinion withdrawn and reentered, 113 F.3d 1243 (9th Cir. 1997) ("Having concluded that there is no basis for distinguishing *Hunter*, the Court is bound by that decision."); *United States v. Dorsey*, 77 F.3d 490 (9th Cir. 1996) (unpublished); *see also United States v. Pellicano*, 135 F. App'x 44, 48 (9th Cir. 2005) (unpublished); *United States v. Jones*, 182 F.3d 928 (9th Cir. 1999) (unpublished). When it affirmed Bronsozian's conviction, the three-judge panel likewise cited to *Hunter* without analysis. *Bronsozian*, 764 F. App'x at 634 ("We rejected all of those claims in [*Hunter*]"). This Court has never addressed the simmering conflict between *Hunter* and *Dalton*, nor has it explained how the reasoning in *Jones* applies in a case involving the simple possession of an unregistered machinegun.

10

### B. This Case is an Ideal Vehicle for Reconsideration of *Hunter*

This case presents an ideal opportunity to revisit and correct the flawed *per curiam* decision in *Hunter*. The Court has a fully developed record. The issue was briefed in detail and this Court has the benefit of a jury trial complete with detailed testimony about the firearm, when it was made and modified, and the impossibility of registering it. ER 104, CR 96 at 240-41. Moreover, because the indictment charged only the simple possession of a single machinegun under § 5861(d), it provides a perfect backdrop to evaluate the validity of the reasoning in *Hunter* and *Jones*.

### C. *Hunter* is Plainly in Conflict With *NFIB*

When the Supreme Court handed down *NFIB* in 2012, it set forth a definitive two-part test to evaluate the validity of a tax statute.

First, the Court held, a valid tax law must actually raise some revenue. *Id*. at 2594. The Court held that the individual mandate of the Affordable Care of Act of 2010 (the "ACA") met this requirement because it imposed a "shared responsibility payment" that was "expected to raise about $4 billion per year by 2017." *Id*. at 2594.

Second, the Court held, a tax cannot be a "penalty." *Id*. at 2595-96. The Court identified three characteristics that distinguish a prohibited "penalty" from a permissible "tax." First, a tax does not impose an "exceedingly heavy" burden. Second, penalties are imposed only on those who intentionally violate the statute. *Id*. at 2595. Third, "penalties" tended to be enforced by law enforcement agencies, rather than the IRS. *Id*.

Applying *NFIB*, § 5861(d) must be invalidated as applied to the simple possession of an unregistered machinegun. The government has conceded that the law now generates no revenue from the regulation of

11

machinegun possession. That fact, on its own, invalidates the statute as a tax measure. Moreover, the law clearly operates as a penalty, rather than a tax. First, it imposes an "exceedingly heavy" burden because the only way it can be enforced is in the form of a felony prosecution. Second, there is a heightened scienter requirement for establishing liability under § 5861(d). *Staples v. United States*, 511 U.S. 600, 616 (1994). Finally, the law is enforced by the Bureau of Alcohol, Tobacco and Firearms ("ATF"), an agency dedicated to law enforcement, not revenue generation.

*NFIB* is controlling in this case. And under *NFIB*, § 5861(d) is indefensible as applied to the possession of an unregistered machinegun.

Indeed, the government has conceded in an analogous context that when the sole revenue-generating provision is stripped from a tax law the law loses its constitutional justification. *See* FER 11 (*Texas et. al. v. United States et. al.*, No. 4:18-cv-00167-O (N.D. Texas), Dkt. No. 92). In that case the plaintiffs challenged the constitutionality of the Individual Mandate of the ACA on the ground that the law's sole revenue generating provision was eliminated as part of the Tax Cuts and Jobs Act of 2017 ("TCJA"), Pub. L. No. 115-97, § 11081, 131 Stat. at 2092. Citing *NFIB*, the government agreed with the plaintiffs. The District Court also agreed and held the law unconstitutional. *Texas v. United States*, 340 F. Supp. 3d 579, 601 (N.D. Tex. 2018) ("So long as the shared-responsibility payment is zero, the saving construction articulated in *NFIB* is inapplicable and the Individual Mandate cannot be upheld under Congress's Tax Power.").[5]

---

[5] The government has maintained that position on appeal. *See Texas, et. al. v. United States, et. al.*, 2019 WL 2061281 (5th Cir. 2019) at 31-32 ("Because the individual mandate operates as a command but no longer functions as a tax, it exceeds Congress's enumerated powers.").

12

13

The government's concession in *Texas v. United States* applies with equal force to this case. Just as the ACA's individual mandate is no longer justified under Congress' power to collect taxes because it generates no revenue, § 5861(d)'s prohibition on the simple possession of machineguns can't be justified as a tax measure because it too generates no revenue.

**V. CONCLUSION**

For the foregoing reasons, Bronsozian respectfully requests that the Court grant this petition and rehear this case *en banc*.

Dated: June 13, 2019            BIENERT | KATZMAN PC

By: _____
    John L. Littrell

    Attorneys for Defendant
    NERSES NICK BRONSOZIAN

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2019, I electronically filed APPELLANT'S PETITION FOR REHEARING AND SUGGESTION FOR REHEARING *EN BANC* with the Clerk of the Court using the CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: June 13, 2019                  */s/ John L. Littrell*
                                      John L. Littrell

                                      Attorney for Appellant
                                      Nerses Nick Bronsozian

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 11. Certificate of Compliance for Petitions for Rehearing or Answers**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** 17-50197

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer to petition is (*select one*):

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: 3,687.

(Petitions and answers must not exceed 4,200 words)

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** /s/ John L. Littrell  **Date** June 13, 2019

(use "s/[typed name]" to sign electronically-filed documents)

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Form 11  Rev. 12/01/2018