Court of Appeals Docket No. 17-50197

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

NERSES NICK BRONSOZIAN,

  Defendant-Appellant.

DC No. 2:16-cr-00196-SVW-1

Panel: Graber, Bybee, Harpool
Decision: April 15, 2019

———————————

**BRIEF OF THE CATO INSTITUTE AND
FIREARMS POLICY COALITION
AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT'S
PETITION FOR REHEARING AND REHEARING *EN BANC***

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

HONORABLE STEPHEN V. WILSON
United States District Judge

Ilya Shapiro
  *Counsel of Record*
Matthew Larosiere
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20001
(202) 842-0200
ishapiro@cato.org

*Counsel for the Cato Institute*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

The Cato Institute is a nonprofit entity operating under § 501(c)(3) of the Internal Revenue Code. The Firearms Policy Coalition is a nonprofit entity operating under § 501(c)(4) of the Internal Revenue Code. Neither *amicus* is a subsidiary or affiliate of any publicly owned corporation, and neither issue shares of stock. No publicly held corporation has a direct financial interest in the outcome of this litigation due to *amici*'s participation.

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT .......................................i

TABLE OF AUTHORITIES ................................................................. iii

INTEREST OF *AMICI CURIAE* ............................................................1

INTRODUCTION AND  SUMMARY OF THE ARGUMENT ............................2

ARGUMENT ...................................................................................3

I.   SECTION 5861(D)'S BAN ON THE POSSESSION OF UNREGISTERED
     MACHINEGUNS IS NOT A CONSTITUTIONAL EXERCISE OF THE
     TAXING POWER ..........................................................................3

     A. The Later-Enacted § 922(O) Removes All of § 5861(D)'S Revenue-
        Raising Potential, Mooting Its Constitutionality as a Tax ...........................3

     B. Section 5861(d) Operates as a "Penalty," not a "Tax" ................................7

     C. The Taxing Clause Grants the Power to Tax, Not a General Federal
        Police Power ...................................................................................8

     D. *Hunter* Was Based on a Misconception of the Function of § 5861(d)
        and § (922)(o) .................................................................................9

II.  APPELLANT'S CONVICTION UNDER § 5861(D) IS A VIOLATION OF
     THE FIFTH AMENDMENT'S GUARANTEE OF THE RIGHT TO DUE
     PROCESS, BECAUSE § 922(O), AS ENFORCED, MAKES IT
     IMPOSSIBLE TO COMPLY WITH § 5861(D) ............................................11

III. A CATEGORICAL BAN ON A CLASS OF ARMS WARRANTS SOME
     FORM OF SECOND AMENDMENT REVIEW ..........................................13

CONCLUSION ................................................................................15

CERTIFICATE OF COMPLIANCE ......................................................16

CERTIFICATE OF SERVICE .............................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Constitutional Provisions**

U.S. Const., Art. I, Sec. 8, Cl. 1 ................................................................3

**Cases**

*Bailey v. Drexel Furniture Co.*, 259 U.S. 20 (1922) ................................4

*Bd. of Supervisors v. Lackawana Iron & Coal Co.*, 93 U.S. 619 (1876) ......... 11-12

*Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767 at 779 (1994)................7

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...................................... 13-14

*Hunter v. United States*, 73 F.3d 260 (9th Cir. 1996)...................................... 10, 12

*Janus v. AFSCME*, 138 S. Ct 2448 (2018) ................................................14

*Lawrence v. Texas*, 539 U.S. 558 (2003).....................................................14

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ...................................14

*Morton v. Mancari*, 417 U.S. 535 (1974) ..................................................11

*Nat'l Fed'n of Indep. Bus. v. Sebelius* 567 U.S. 519 (2012) .......................... *passim*

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185 (5th Cir. 2012) ....................................................13

*Obergefell v. Hodges*, 135 S. Ct. 1039 (2015)............................................14

*Sonzinsky v. United States,* 300 U.S. 506 (1937)................................... 3, 5, 6

*United States v. Ardoin*, 19 F.3d 177 (5th Cir. 1994)...................................12

*United States v. Butler*, 297 U.S. 1 (1936) ...................................................6

*United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992)................................ 5, 6, 11

*United States v. Fisher*, 109 U.S. 143 (1883) ...............................................12

*United States v. Jones*, 976 F.2d 176 (4th Cir. 1992)................................4, 11

*United States v. Kurt*, 988 F.2d 73 (9th Cir. 1993)......................................12

*United States v. Rock Armory*, 773 F. Supp. 117 (C.D. Ill. 1991)...........................5

*United States v. Ross*, 9 F.2d 1182 (7th Cir. 1993).....................................12

**Statutes**

18 U.S.C. 922(o) .........................................................................................2

26 U.S.C 5861(d) .......................................................................................2

**Other Authorities**

Aerosmith, *Dream On* (Columbia Records 1973)......................................5

# INTEREST OF *AMICI CURIAE*[1]

The Cato Institute is a nonpartisan public policy research foundation founded in 1977 dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Center for Constitutional Studies helps restore the principles of constitutional government that are the foundation of liberty. Toward those ends, Cato publishes books and studies, conducts conferences, produces the annual *Cato Supreme Court Review*, and files *amicus* briefs.

The Firearms Policy Coalition, Inc. (FPC) is a nonprofit membership organization that works to defend constitutional rights and promote individual liberty, including the right to keep and bear arms, throughout the United States. Towards those ends, FPC engages in direct and grassroots advocacy, research, legal efforts, outreach, and education.

This case interests *amici* because it concerns the enumeration and thus limitation of federal power, most notably the proper scope of the government's taxing power and its ability to restrict the right of the people to keep and bear arms.

---

[1] Fed. R. App. P. 29 Statement: No counsel for either party authored this brief in whole or in part. No person or entity other than *amici* made a monetary contribution to its preparation or submission. Pursuant to Ninth Circuit Local Rule 29-2(a), all parties have been notified and have consented to the filing of this brief.

## INTRODUCTION AND
## SUMMARY OF THE ARGUMENT

In 1986, Congress enacted the Firearm Owners Protection Act ("FOPA"), which includes a ban on the transfer or possession of a machinegun not lawfully possessed and registered by May 19, 1986. 18 U.S.C. § 922(o). But before § 992(o) came 26 U.S.C § 5861(d), which makes it unlawful "to receive or possess a firearm *which is not registered*" (emphasis added). After FOPA, the Bureau of Alcohol, Tobacco and Firearms ("ATF") no longer accepted the registration of and payment of taxes on new machineguns. In stripping § 5861(d) of *all* revenue-raising potential, § 922(o) mooted § 5861(d)'s constitutional warrant under Congress's Taxing Power.

In addition, § 922(o) renders § 5861(d)'s application a violation of appellant's right to due process. Because ATF will not accept the registration of new machineguns, compliance with § 5861(d) is impossible. Section 5861(d) is thus in irreconcilable conflict with § 922(o), and since Congress enacted the latter after the former, it controls.

*Amici* also caution against what we perceive to be a concerning departure from fundamental rights jurisprudence. By refusing to present an analysis of *why* the regulation of machineguns is beyond the scope of the Second Amendment, the courts are glazing over an important constitutional question. If a class of arms can be regulated nearly to the point of a categorical ban—which machineguns may well be—the American people deserve to at least know the constitutional justification.

2

**ARGUMENT**

## I. SECTION 5861(D)'S BAN ON THE POSSESSION OF UNREGISTERED MACHINEGUNS IS NOT A CONSTITUTIONAL EXERCISE OF THE TAXING POWER

"The Congress shall have power to lay and collect taxes, duties, imposts, and excises[.]" U.S. Const., Art. I, Sec. 8, Cl. 1. This "taxing power" must be fenced by certain legal and logical parameters to contain federal power within its proper scope and provide meaningful guidance to Congress in the enactment and enforcement of laws made pursuant to such power.

Although the Supreme Court doesn't look past the face of a revenue-raising law to ensure that its purpose is so-limited, it will invalidate the law if it does not function as a tax. *Sonzinsky v. United States,* 300 U.S. 506, 513 (1937) ("[A]s it is not attended by an offensive regulation, and since it operates as a tax, it is within the national taxing power."). The Supreme Court's three-pronged definition of a "tax" versus a "penalty" in *Nat'l Fed'n of Indep. Bus. v. Sebelius* ("*NFIB*") 567 U.S. 519 (2012) and a series of earlier opinions probing the limits of the Taxing Clause show that, whatever 5861(d) is, it is not a "tax."

### A. The Later-Enacted § 922(O) Removes All of § 5861(D)'S Revenue-Raising Potential, Mooting Its Constitutionality as a Tax

In *NFIB*, the Supreme Court characterized a "tax"—in contrast to a "penalty"—as (a) an amount "far less" than the cost of acting to do that which the law directs, that (b) "contains no scienter requirement," and (c) "is collected solely

3

by the IRS through the normal means of taxation," excluding, crucially, the imposition of criminal sanctions. *NFIB*, 567 U.S. at 522 (citing *Bailey v. Drexel Furniture Co.*, 259 U.S. 20, 36-37 (1922)).

The Court contrasted these characteristics of Obamacare's individual mandate (ultimately held to be a "tax" despite the law's expressly referring to a "penalty") with those of the ostensible "tax" at issue in *Drexel Furniture*. The *Drexel* Court held a "tax" on child labor to be a penalty where it (a) "imposed an exceedingly heavy burden" on violators of the law in issue, (b) included a scienter requirement, and (c) "was enforced in part by the Department of Labor, an agency responsible for punishing violations of labor laws, not collecting revenue." *Id*. at 566.

Long before *NFIB*, however, the Fourth and Tenth Circuits split on whether § 5861(d) remained constitutional under the Taxing Clause post-§ 922(o). This split is one of both definition (which *NFIB's* three-factor test now controls) and categorization—whether a law passed with the purpose and function of raising revenues can still be constitutional under the Taxing Clause if it "aids" in the taxation of an activity clearly outside the scope of the law.

The Fourth Circuit, purporting to apply *Sonzinsky* reasoned that law enforcement "knowing the chain of possession and transfer" of machineguns "assists in determining who made the firearm and hence 'is supportable as in aid of a revenue purpose.'" *United States v. Jones*, 976 F.2d 176, 184 (4th Cir. 1992) (quoting

4

*Sonzinsky*, 300 U.S. at 513). But *Sonzinsky* provides no support for that holding. Indeed, the "aid of a revenue purpose" at issue there was an "annual license tax on dealers in firearms" analogous to the registration fees that § 5861(d) imposed pre-§ 922(o). *Sonzinsky*, 300 U.S. at 506. As was the case in *Drexel Furniture* and *NFIB*, the law in *Sonzinsky* was only categorized as a tax insofar as it serves—or can serve—to raise revenues. "As [the annual license tax on firearms dealers] is not attended by an offensive regulation, *and since it operates as a tax*, it is within the national taxing power." *Id*. at 514 (emphasis added).

Accordingly, the Tenth Circuit, also interpreting *Sonzinsky*, held that § 922(o) "removed the constitutional legitimacy of registration as an aid to taxation." *United States v. Dalton*, 960 F.2d 121, 125 (10th Cir. 1992) (quoting *United States v. Rock Armory*, 773 F. Supp. 117, 125 (C.D. Ill. 1991)). As the court held, § 922(o)'s effective prohibition on registering new machineguns prevents § 5861(d) from "aiding" in taxation because it is now incapable of collecting any revenue. The tax is gone. It went by, like dust to dawn. Isn't that the way the government can't collect these dues in life to pay? *Cf.* Aerosmith, *Dream On* (Columbia Records 1973).

In other words, the Tenth Circuit held that a tax is a tax is a tax, and that the total defeat of a tax law's core revenue-raising function will render the law beyond the scope of the Taxing Clause. Fundamentally, the fact that § 5861(d) can be construed as helping the collection of another tax does nothing to remedy § 922(o)'s

abrogation of its constitutionality, because § 5861(d) itself no longer raises any revenues. As discussed above, Supreme Court precedent provides that, if nothing else, the *sine qua non* of a tax is its capability to raise revenue, either directly or in express conjunction with other laws within the same regulatory schema.

While *amici* do not contest that § 5861(d) could *conceivably* help federal law enforcement better identify the manufacturers of unregistered machineguns, Supreme Court precedent in the character of "aid in taxation" supports the Tenth Circuit's equation of "aid" as a law with an inherent, rather than ancillary, "revenue purpose." *Dalton*, 960 F.2d at 124 (quoting *Sonzinsky*, 300 U.S. at 513).

Supreme Court cases before *NFIB* also bear out this categorization of a proper tax as limited to those laws that directly raise revenues. The Court views the "true construction" of the Taxing Clause as a "power to tax for the purpose of providing funds for payment of the nation's debts and making provision for the general welfare." *United States v. Butler*, 297 U.S. 1, 64 (1936). The Court concluded in *Butler* that the words of the Taxing Clause "were intended to limit and define the granted power to raise and to expend money." *Id*. at 106.

While § 922(o) can of course be repealed, its continued force extinguishes § 5861(d)'s constitutionality under the taxing power. For so long as § 922(o) is in effect, § 5861(d) cannot be a constitutional exercise of the taxing power. To hold otherwise would be to suggest that Congress can ignore the limits Article I so long

6

as the statutory scheme for doing so layered seemingly constitutional laws to achieve a result beyond Article I's scope. Here, a tax in the form of registration fees on unregistrable machineguns means the activity of registering machineguns will never occur and therefore the revenue will never surface.

It is squarely within the judicial power to balance the effects of a law passed pursuant to the taxing power and determine whether it indeed imposes a tax. In *NFIB*, there was no question as to the revenue-raising potential of the individual mandate, as it required all persons who did not purchase health insurance to pay a "tax." The only question was whether the provision was a "penalty" or as a "tax."

## B.    Section 5861(d) Operates as a "Penalty," not a "Tax"

In *NFIB*, the Court built on cases in which it had said that "there comes a time in the extension of the penalizing features of the so-called tax when it loses its character as such and becomes a mere penalty with the characteristics of regulation and punishment." *NFIB*, 567 U.S. at 573 (quoting *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 779 (1994). Indeed, the Court's entire treatment of a "tax" in *NFIB* presupposes that a law properly imposes a tax only when it levies or otherwise obtains revenues (as was the case in pre-§ 922(o) § 5861(d), by the fees generated through registration): "The requirement to pay is found in the Internal Revenue Code and enforced by the IRS . . . . This process yields the essential feature of a tax: it produces at least some revenue for the Government." *NFIB*, 567 U.S. at 564.

Applying *NFIB*, § 5861(d) is more akin to a "penalty" than a "tax" because it (a) poses a heavy burden on violators (including criminal sanction which cannot be averted through the payment of fees), (b) includes a scienter requirement, and (c) since it cannot raise revenue, its administration and enforcement are the sole responsibility of the Department of Justice (including the ATF), rather than the IRS.

"Congress's use of the Taxing Clause to encourage buying something is, by contrast, not new . . . Sustaining the [individual] mandate as a tax depends only on whether Congress *has* properly exercised its taxing power to encourage purchasing health insurance, not whether it *can*." *Id*. at 572 (emphasis in original). Thus the constitutionality of a law passed via the Taxing Clause does not necessarily depend on the purpose for which it is enacted, but instead can rely on its actual ability to raise revenues. If a law enacted for non-revenue-raising purposes—say, a tax on cigarettes designed to reduce cigarette consumption—has the potential to raise revenues, it fits within the taxing power as defined by the Supreme Court. But such a law, whatever its purpose, must also function as a "tax" rather than a "penalty" under *NFIB*'s three-factor test. Section 5861(d) only threatens to impose criminal punishment, not monetary exactions. A tax it is not.

### C. The Taxing Clause Grants the Power to Tax, Not a General Federal Police Power

Justice Scalia in oral arguments for *NFIB* warned of the threat of Commerce Clause overreach in his famous broccoli analogy: "Could you define the market," he

asked of Solicitor General Donald Verrilli, "everybody has to buy food sooner or later, so you define the market as food, therefore, everybody is in the market; therefore, you can make people buy broccoli." Tr. of Oral Arg. at 10-14, *NFIB v. Sebelius*, 567 U.S. 519 (No. 11-398). This metaphor is also useful in the Taxing Clause context. Left unquestioned, Congress's taxing power could extend to everything it now does under its interstate commerce power. After all, what is of greater "aid" to taxation than the facilitation of countless taxable money transfers?

If what comprises constitutional "aid to taxation" were as the Fourth Circuit asserts, then an entire universe of human activities that arguably supported a taxing enterprise—and as any lawyer will tell you, anything can *arguably* be true—would be open to federal regulation, even if the "aiding" statute were not by constitutional design nor legislative contemplation intended to so function. We can, for instance, imagine the creation of a federal registry of all homeowners that includes valuations of each homeowner's residence. This registry could arguably aid in the IRS's accurate determination of the amount of individual taxpayers' mortgage deduction, but would clearly intrude upon the traditional powers of state and local governments.

D. *Hunter* Was Based on a Misconception of the Function of § 5861(d) and § (922)(o)

This Court previously sided with the Fourth Circuit on the question of whether § 5861(d) remains constitutional under the taxing power even though the enactment and enforcement of § 922(o) deprived § 5861(d) of all of its revenue-raising

potential. *Hunter v. United States*, 73 F.3d 260, 262 (9th Cir. 1996) (reasoning that "requiring those who possess machine guns to register them is in aid of the taxing power even if the government no longer taxes possession".)

As noted earlier, the idea of taxation-by-proxy is itself suspect. The position this Court took in *Hunter*, however, carries with it another concern. From the above passage, it appears that *Hunter*'s rationale for the constitutional reconciliation of § 5861(d) and § 922(o) is based on a mistaken understanding of the latter's impact on the former. Under § 922(o) and the broader FOPA regime, the ATF, even if permitted to do so, would have no reason to accept the registration of new machineguns. Yet in *Hunter* this Court maintains that the "aid in taxation" purpose supposedly still imbues § 5861(d) with a constitutional cloak from the assistance the registration of possession might provide in tracking down manufacturers of newly-made machine guns, which as we explained itself remains taxable. Viewed from this perspective, *Hunter*'s central holding is untenable, as it expects the "aid in taxation" purpose to operate only upon the enforcement of a law—§ 5861(d)—that cannot be complied with in light of the subsequently enacted § 922(o).

Accordingly, if necessary this Court should *en banc* overturn *Hunter* and adopt the Tenth Circuit's view that, in stripping § 5861(d) of its ability to raise revenue, § 922(o) also deprives it of its basis as an exercise of the taxing power.

10

## II.   APPELLANT'S CONVICTION UNDER § 5861(D) IS A VIOLATION OF THE FIFTH AMENDMENT'S GUARANTEE OF THE RIGHT TO DUE PROCESS, BECAUSE § 922(O), AS ENFORCED, MAKES IT IMPOSSIBLE TO COMPLY WITH § 5861(D)

Appellant's conviction under § 5861(d) is a violation of his Fifth Amendment right to due process because it (a) irreconcilably conflicts with § 922(o), a subsequently-enacted law and (b) is physically impossible to perform.

The Tenth Circuit in *Dalton* stated that "a statute is repealed by implication only when that statute and a later statute are irreconcilable." 960 F.2d at 126 (citing *Morton v. Mancari*, 417 U.S. 535, 549-55 (1974)). While the court could have elaborated, the Fourth Circuit's rationale for rejecting the Tenth's conclusion clues us to the wrongness of the idea that § 5861(d) and § 922(o) are indeed reconcilable.

In the Fourth Circuit's estimation, § 5861(d) and § 922(o) are reconcilable because one "can comply with both acts by refusing to deal in newlymade [*sic*] machine guns." *Jones*, 976 F.2d at 183. But the possibility of abstaining from a given activity does not somehow reconcile otherwise incompatible laws. If Congress had wished for two laws to act in conjunction to foreclose acting in a specific area, it would have said so, rather than leaving it to courts to hand-wave a solution.

When two laws regulating an activity appear, on their face, to be irreconcilable short of the total abstention from the activities proscribed, the proper interpretation is the traditional interpretive canon whereby the earlier law yields to the later one. *See Bd. of Supervisors v. Lackawana Iron & Coal Co.*, 93 U.S. 619, 624 (1876)

11

("Repeal by implication is not favored in the law. It is held to occur only where different statutes cover the same ground and there is a clear and irreconcilable conflict between the earlier and the later."); *see also United States v. Fisher*, 109 U.S. 143, 145 (1883) ("Where two acts are in irreconcilable conflict the later repeals the earlier act, even though there be no express repeal.") (cleaned up).

This Court in *Hunter* departed from its earlier favorable treatment of *Dalton* to reject the Tenth Circuit's interpretation of irreconcilability. *Cf. United States v. Kurt*, 988 F.2d 73, 75 (9th Cir. 1993) ("not[ing] with favor the analysis in *Dalton*"). But in the intervening years, as the Court in *Hunter* noted, "three circuits ha[d] expressly rejected the *Dalton* holding." In siding with the *Jones* species of cases, this Court reasoned that "the Constitution does not forbid making the same conduct illegal under two statutes," with prosecutors "permitted to prosecute under either one." *Hunter*, 73 F.3d at 262 (citing *United States v. Ross*, 9 F.2d 1182, 1195 (7th Cir. 1993); *United States v. Ardoin*, 19 F.3d 177, 180 (5th Cir. 1994)). As it had on the question of § 5861(d)'s continued constitutionality under the taxing power, this Court in *Hunter* again misunderstood the interplay between § 922(o) and § 5861(d). The two don't on their face make "the same conduct illegal," but § 922(o) in practice makes it impossible to *comply* with § 5861(d)'s registration requirement.

Put simply, the appellant and those similarly situated have no way to comply with § 5861(d)—short of a total cessation of the transfer or possession of

machineguns, a degree of proscription not contemplated by the law. Compliance through total disengagement from dealing in machineguns that were not first registered by May 19, 1986 would, in the aggregate, obviate the argument that § 5861(d) "aids" in the taxation of other activities that, as the Fourth Circuit contends, controls whether the law remains constitutional under the Taxing Clause.

## III.    A CATEGORICAL BAN ON A CLASS OF ARMS WARRANTS SOME FORM OF SECOND AMENDMENT REVIEW

*Amici* understand that this Court has no appetite for ruling on the status of machineguns under the Second Amendment. Nor are we here arguing for any particular interpretation of that question. That said, we want to call to the Court's attention what we perceive here to be a concerning departure from American legal tradition and fundamental-rights jurisprudence.

Many laws respecting possession of arms have dodged meaningful review because of a piece of dicta discussing "presumptively lawful" regulations. *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008). But there are few Founding-era analogues for the types of restrictions *Heller* identified as "presumptively lawful." *See*, *e.g.*, *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 196 (5th Cir. 2012) ("*Heller* considered firearm possession bans on felons and the mentally ill to be longstanding, yet the current versions of these bans are of mid-20th century vintage."). By declaring that "there will be time enough to expound upon the *historical justifications* for the exceptions

13

we have mentioned," *Heller*, 554 U.S. at 635 (emphasis added), the Supreme Court indicated that these regulations were expected to be long-ingrained in our law. But whether they—and which ones—actually are is an open question of significant constitutional import. Bare reference to a "presumptively lawful" categorization and its never-explained examples has done nothing to establish such justifications.

The patchwork of "presumptively lawful longstanding" regulations, as well as the concept of "dangerous and unusual" weapons originating in *Heller*, leaves Second Amendment claims open to wildly divergent avenues of analysis. The concepts are malleable enough for judges to insert whatever regulations they agree with, a problem Justice Breyer rightly pointed out at the outset. *McDonald v. City of Chicago*, 561 U.S. 742, 925 (2010) (Breyer, J., dissenting) ("[W]hy these rules and not others? Does the Court know that these regulations are justified by some special gun-related risk of death? In fact, the Court does not know. It has simply invented rules that sound sensible.").

It is inconsistent with the concept of fundamental rights that a restriction becomes constitutional if the government gets away with it for long enough, or because certain people believe it to be a good idea. A host of longstanding laws have been found to be violations of the rights of Americans. *See, e.g.*, *Janus v. AFSCME*, 138 S. Ct 2448 (2018); *Obergefell v. Hodges*, 135 S. Ct. 1039 (2015); *Lawrence v. Texas*, 539 U.S. 558 (2003). An analysis as deep as "we've been doing this for a

while, so it must be okay" would not have satisfied the plaintiffs in *Obergefell*, much less those in *Lawrence* who faced a credible threat of prosecution. Why this carries mere possession to a serious felony in the firearm context at least requires judicial explication.

## CONCLUSION

For the foregoing reasons, as well as those presented by Defendant-Appellant, the Court should grant the petition for rehearing.

Respectfully submitted,

DATED: June 20, 2019.                /s/ Ilya Shapiro

                /s/ Matthew Larosiere

Ilya Shapiro
 *Counsel of Record*
Matthew Larosiere
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20001
(202) 216-1461
ishapiro@cato.org

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of 9th Cir. R. 29-2(c)(2) because it contains 3,645 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in Times New Roman, 14-point font.


/s/ *Ilya Shapiro*
June 20, 2019

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court, who will enter it into the CM/ECF system, which will send a notification of such filing to the appropriate counsel.

/s/ *Ilya Shapiro*
June 20, 2019